AO 93  (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) Case No. 22 - 5034MB |
| TRed 2002 Ford F150 bearing Arizona temp tag 14780JP and VIN 1FTRW08L42KB57042 | ) ) ) ) |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____ Arizona _____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated by reference

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before _1/28/22_
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.    ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge
on duty in the District of Arizona _____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: _Jan. 14, 2022 @ 2:16 pm_      _Deborah Fine_
                                                                              *Judge's signature*

City and state:   _Phoenix Arizona_ _____      Deborah M. Fine, U.S. Magistrate Judge
                                                                              *Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

A 2002 Red Ford F150 bearing Temp tag 14780JP, and VIN 1FTRW08L42KB57042 currently in the custody of Phoenix Police Department.

## ATTACHMENT B

### PROPERTY TO BE SEIZED

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), Title 18 U.S.C. § 841 (a)(1) possession with intent to distribute a narcotic, and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1. Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2. Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3. US Currency;

4. Concealed Weapons Permit.

5. Fentanyl, or any other illicit drug

6. The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d)  (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

   a. Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

   b. Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

    c.    Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

    d.    Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

    e.    Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.    Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.    Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.    Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment. For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage

medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

a. Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. Call details including call history, duration of calls, text messages, and text message history;

c. Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

d. Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

e. Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

f. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

g.      Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h.      Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j.      Evidence of the times the Electronic Storage Device was used;

k.      Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l.      Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m.      Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n.      Contextual information necessary to understand the evidence described in this attachment; and,

o.      Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9.   Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

AO 93  (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

     *I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.*

Date: _____

 

_____

*Executing officer's signature*

 

_____

*Printed name and title*

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Arizona

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Red 2002 Ford F150 bearing Arizona temp tag 14780JP and VIN 1FTRW08L42KB57042

)
)
)
)
)

Case No. 22-5034mB

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, incorporated by reference.

located in the _____ District of _____ Arizona _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(a)(1)(A) | Unlicensed firearms dealing |
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |
| 18 U.S.C. 924(a)(1)(A) | False statements in records required to be kept by an FFL |

The application is based on these facts:
See attached Affidavit, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____*Brett Day*_____
Reviewed by Brett A. Day, AUSA

*katherine rottman*
Applicant's signature

Katherine Rottman, Special Agent
Printed name and title

Sworn to and signed electronically.

Date: Jan. 14, 2022 @ 2:40 pm

_____
Judge's signature

City and state:  Phoenix, Arizona

Deborah M. Fine, United States Magistrate Judge
Printed name and title

## **ATTACHMENT A**

### **PROPERTY TO BE SEARCHED**

A 2002 Red Ford F150 bearing Temp tag 14780JP, and VIN 1FTRW08L42KB57042 currently in the custody of Phoenix Police Department.

## ATTACHMENT B

### PROPERTY TO BE SEIZED

Agents are authorized to search for evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license), Title 18 U.S.C. § 841 (a)(1) possession with intent to distribute a narcotic, and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)); and, as further described in the affidavit of probable cause including:

1. Any firearms including firearms parts, frames, receivers, accessories, magazines, cases, boxes;

2. Any ammunition and components including, bullets, brass, casings, boxes, and cases;

3. US Currency;

4. Concealed Weapons Permit.

5. Fentanyl, or any other illicit drug

6. The following records relating to the violations of 18 U.S.C. § 922(a)(1)(A) (Engaging in the business of dealing, importing, manufacturing firearms without a license) and 18 U.S.C. § 924(d) (Sell or otherwise dispose of firearms or ammunition to any person who is prohibited under Title 18 USC §922(g)):

   a. Records, documents, notes, receipts, ledgers, invoices, indicia, or photographs showing the acquisition or sale of any firearms and firearm parts;

   b. Receipts, bank account records, buyer or seller lists, money transfer records, agreements for storage facilities, records of mail service, ledgers, and notebooks showing the acquisition and/or disposition of firearms and firearm parts;

    c.    Books, records, receipts, notes, ledgers, personal checks and other papers relating to the transportation, ordering, and purchase of firearms, firearm accessories, or ammunition;

    d.    Ledgers, customer lists, contact lists, inventory lists, vendor lists, or any notes containing the individual names of such persons, telephone numbers or addresses of such persons; and,

    e.    Bank documents and records, financial documents and records, and any records and documents relating to any bank or financial transactions, including: correspondence, signature cards and applications for all credit card accounts, investment accounts, and retirement accounts; copies of monthly, quarterly, yearly or periodic account statements; pre-paid credit/debit cards; money wrappers; copies of check journals, check ledgers, checkbooks, check registers, deposit tickets, deposit items, credit memos, debit memos, canceled checks, loan applications, financial statements, mortgage or promissory notes; copies of loan ledger accounts; copies of annual loan statements; application for bank drafts, cashier's checks, and foreign drafts; and records relating to employment, wages earned and paid, business income earned, and other compensation records.

6.    Records indicating occupancy, residency, rental or ownership of the search location, including utility and telephone bills, canceled envelopes, rental, purchase or lease agreements, and keys;

7.    Any and all records pertaining to the rental of self-storage units and post office boxes or mailboxes;

8.    Electronic equipment, including cellular telephones, computers, disks, thumb drives, and any media storage device, GPS devices and their memory, and related manuals used to generate, transfer, count, record or store the information described in this attachment. For any computer or electronic storage medium whose seizure is otherwise authorized by this warrant, and any computer or electronic storage

medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, the "Electronic Storage Device"), this warrant also authorizes the seizure of the following:

    a.    Evidence of who used, owned, or controlled the Electronic Storage Device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved user names and passwords, documents, and browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    b.    Call details including call history, duration of calls, text messages, and text message history;

    c.    Electronic correspondence and communications stored on, or accessed through, the Electronic Storage Device relating to the procurement of export-controlled items, to include e-mails and attached files, text messages, any Short Message Service messages (SMS), Instant Messages (IM), Multimedia Message Service messages, or similar text or electronic messages made through additional applications from which communication can be made, and instant messaging logs;

    d.    Contact lists stored on or accessed through the Electronic Storage Device, to include telephone and e-mail contact names, telephone numbers, addresses, and e-mail addresses;

    e.    Evidence of software that would allow others to control the Electronic Storage Device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    f.    Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

g. Evidence indicating how and when the Electronic Storage Device was accessed or used to determine the chronological context of Electronic Storage Device access, use, and events relating to crime under investigation and to the user of the Electronic Storage Device;

h. Evidence of the attachment to the Electronic Storage Device of other storage devices or similar containers for electronic evidence;

i. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Electronic Storage Device;

j. Evidence of the times the Electronic Storage Device was used;

k. Passwords, encryption keys, and other access devices that may be necessary to access the Electronic Storage Device;

l. Documentation and manuals that may be necessary to access the Electronic Storage Device or conduct an examination of the Electronic Storage Device;

m. Any records of or information about Internet Protocol addresses used by the Electronic Storage Device;

n. Contextual information necessary to understand the evidence described in this attachment; and,

o. Any peripheral equipment used to facilitate the transmission, creation, display, encoding or storage of records, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners.

9. Items used for identification, including identification cards under fictitious names, and any other type of false identifying documents.

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Katherine A Rottman being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      This affidavit is submitted in support of an application for a warrant to search the following property, which is further described in Attachment A, for evidence of a violation of Title 18 U.S.C § 371 (conspiracy to commit any offense against the United States), 18 U.S.C. § 924(a)(1)(A) (False statements in records required to be kept by an FFL), 922(a)(1)(a) dealing in firearms without a license, Title 18 U.S.C. § 841(a)(1) possession of a controlled substance with intent to distribute, and Title 18 U.S.C. 922(n) receipt of a firearm by a person under indictment for a crime punishable by a year or more in the red 2002 Ford F150 bearing Arizona temp tag 14780JP and VIN 1FTRW08L42KB57042. (**Subject Vehicle**)

2.      I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF) and have been since June 2020. I am graduate of the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP) and a graduate of the ATF National Academy Special Agent Basic Training (SABT) programs in Glynco, Georgia. I am empowered by law to conduct investigations of and make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

3.      My training in law enforcement includes agency specific training in all aspects of conducting federal criminal investigations, including the planning, preparation, and execution of search warrants. I am an "investigative or law enforcement officer of the

United States" within the meaning of Title 18, U.S.C. § 2510(7), authorized to conduct investigations into alleged violations of federal law.

4.      Through my training and experience, I know that it is a violation of federal law for any person who knowingly makes a false statement or representation with respect to the information required by federal law to be kept in the records of an FFL according to Title 18, U.S.C., U.S.C. § 924(a)(1)(A).

5.      This affidavit is intended to show that there is sufficient probable cause for the requested search warrant and does not purport to set forth all my knowledge of or investigation into this matter.  The statements set forth in this affidavit are based upon my investigation to date, my experience, my training, and other reliable sources of information relative to this investigation.

## PROPERTY TO BE SEARCHED

6.      The property to be searched is a red 2002 Ford F150 bearing Arizona temp tag 14780JP as more fully described in Attachment A, incorporated herein by reference.

## ITEMS TO BE SEIZED

7.      The items to be seized are described in Attachment B, incorporated herein by reference.

## PROBABLE CAUSE

### Introduction

8.      As of October 2021, ATF has been investigating the activities of Devin VARELA and Humberto MAGANA regarding violations of Title 18 U.S.C. § 924(a)(1)(A), knowingly making a false statement or representation with respect to the records required by federal law to be kept by an FFL, Title 18 U.S.C.§ 922(a)(1)(a), dealing in firearms without a license, Title 18, U.S.C. § 922(o), transfer or possession of a machinegun, and 21 U.S.C. § 841(a)(1) distribution or possess with intent to distribute a controlled substance.

9.      On January 13, 2022, VARELA and MAGANA were arrested in the **Subject Vehicle** by Phoenix Police Department (PPD) at an apartment complex in Phoenix, Arizona. VARELA and MAGANA were arrested pursuant federal arrest warrants as part of a coordinated operation between ATF and PPD. In a post-*Miranda* interview, VARELA admitted to the activities detailed below. The **Subject Vehicle** was seized and impounded by PPD.

10.     On October 27, 2021, ATF began an investigation into Jorge Antonio HUERTA Jr. (DOB xx/xx/2000) based upon his purchase of multiple similar firearms, many of the same make and model, and the recovery of two of those firearms in a vehicle where Devin VARELA (xx/xx/2001) claimed ownership of both guns, at a crime scene following a drive-by shooting in Phoenix, Arizona.

17

11.     Your Affiant has received information that VARELA and MAGANA are placing orders for firearms from local Federal Firearms Licensees (FFLs) and receiving firearms that were purchased by others for them.  VARELA and MAGANA have been observed by law enforcement receiving and transporting the straw purchased firearms and narcotics in the **Subject Vehicle.**

12.     On November 3, 2021, Your Affiant received information that HUERTA had purchased a total of 35 firearms since June 22, 2021.  Six of the firearms HUERTA purchased have been recovered at crime scenes in Phoenix, Arizona.  On October 24, 2021, Phoenix Police Department (PPD) responded to reports of gunshots being fired at a large house party located at 78th Ave, Phoenix, Arizona. While PPD was at the scene, they heard several additional gunshots. The reporting party notified PPD that a red Ford truck bearing AZ plate A3A23E was responsible for the gunshots. PPD located the a Red Ford F-150 truck bearing AZ plate A3A23E and recovered three firearms. Two of the recovered firearms were purchased by HUERTA 6-days, and 10-days, prior to their recovery, respectively.

13.     PPD identified one of the six occupants inside the red Ford truck as Devin Varela (xx/xx/2001). VARELA admitted to ownership of the three recovered firearms, as well as admitted ownership of the Red Ford F-150 bearing AZ plate A3A23E.

14.     On November 8, 2021, HUERTA purchased a total of five Glock 19x 9mm pistols at various FFLs in the Phoenix area.  One of those purchases occurred at FFL Glockmeister, located in Phoenix, Arizona.

15.     On November 12, 2021, HUERTA arrived at Scottsdale Gun Club at 11:06 a.m. HUERTA purchased one Micro Draco pistol bearing serial number 21PMD-25895, and one FN Five Seven pistol bearing 386412643.

16.     On November 16, 2021, HUERTA left his residence at 8:09 a.m. HUERTA then drove to Bear Arms, located at 10321 N Scottsdale Rd Scottsdale, AZ 85253, and purchased a FN pistol bearing serial number 386413559. Surveillance units observed HUERTA leave Bear Arms with a gun box, drive to 1600 E Camelback Road, and meet a Hispanic male in a Red Ford F-150 pickup truck, bearing AZ plate A3A23E.  HUERTA handed the gun box off to the Hispanic male in the driver's seat.  Surveillance units observed the Hispanic male in the Red Ford F-150 drive across the street and hand the gun box to Jesus CAZARES.  Surveillance units developed probable cause for a stop of CAZARES, and when units attempted to stop CAZARES, units observed the FN pistol bearing serial number 386413559 fall out of CAZARES's vehicle when CAZARES attempted to flee from the vehicle stop.

17.     In the vehicle, at the foot of the passenger's seat, units observed a Micro Draco pistol bearing serial number 21PMD-25895, same as the Micro Draco pistol purchased by HUERTA on November 12, 2021 from Scottsdale Gun Club. In addition to the two pistols recovered which were previously purchased by HUERTA, law enforcement also recovered approximately 12,000 fentanyl pills in CAVARES' vehicle.

18.     HUERTA was arrested on November 16, 2021, for violations of Title 18 USC 924(a)(1)(a). After HUERTA's arrest and post-*Miranda*, HUERTA stated following:

i.  The FN five-seven pistol that HUERTA purchased on the morning of November 16, 2021 from Bear Arms was ordered by VARELA. VARELA asked HUERTA to purchase the FN five-seven pistol for him. VARELA paid HUERTA $2,000 total to purchase the FN five-seven pistol. HUERTA spent $1,200 on the pistol and profited $800.

ii.  VARELA also ordered the Micro Draco pistol that HUERTA purchased from Scottsdale Gun Club on November 12, 2021. HUERTA was reimbursed for the cost of the Micro Draco and profited approximately $400 for purchasing the firearm for VARELA.

iii.  HUERTA also stated that VARELA ordered "several" Glock 19x pistols. HUERTA purchased several Glock 19x pistols for VARELA and made several hundred dollars in profit.

19.     After the interview of HUERTA, ATF TFOs began monitoring VARELA and MAGANA's Snapchat accounts, identified as "El Devin" and "Muñeco" respectively. In both VARELA and MAGANA's Snapchat accounts, agents have identified postings which indicate that they are recruiting straw purchasers of firearms.   On November 27, 2021, VARELA posted a Snapchat that stated "21+ w a clean record hit me if you wanna make bread" (see photo)



20.     Similarly, MAGANA has also been posting similar solicitations on his own Snapchat account (Muñeco).   The postings by VARELA and MAGANA often occur contemporaneous to each other.

 

21.     The postings indicate that VARELA and MAGANA are looking for straw purchasers over 21 years of age, because per the GCA, individuals can only legally purchase handguns at the age of 21. They are also looking for straw purchasers with a "clean record" because they need someone who can pass a background check at an FFL.

22.     At the direction of ATF special agents, CI-7674 (CI-1) began monitoring VARELA'S Snapchat account, "el devin," which VARELA then changed to "El Devin LT".

23.     On December 12, 2021, CI-1 observed an advertisement on VARELA's account for fentanyl pills and a Glock firearm with a fully automatic conversion device attached. Such a conversion device will convert a Glock firearm to fully automatic, such that it will fire multiple rounds with a single trigger pull. By definition, the conversion device will convert the Glock pistol to a machine-gun under 18 U.S.C. 922(o).

24.     Under the direction of ATF, CI-1 contacted VARELA to set up a purchase of the firearm and the fentanyl pills. VARELA told CI-1 that the Glock with the conversion device would be $1,700 and that the fentanyl pills would be $1.40 per pill. CI-1 agreed to purchase the firearm and 1,500 fentanyl pills at this price.

 

25.     VARELA agreed to meet CI-1 at Metro Center mall on December 13, 2021 at approximately 1 p.m.

26.     At approximately 12:52 p.m., ATF agents observed through both audio and visual surveillance the completed transaction between CI-1 and VARELA. Agents observed VARELA pull up to the driver's side of CI-1's vehicle. CI-1 exited his/her vehicle and stood at the passenger door of VARELA's vehicle, a Red Ford F-150 bearing AZ pate A3A23E.

27.     VARELA was in the passenger's seat of the vehicle, and an unknown Hispanic male was driving. VARELA had a Glock case in his lap, and both the firearm and fentanyl pills were inside the case. VARELA handed the case to CI-1, and informed CI-1 that he could get CI-1 an additional 25,000 to 30,000 fentanyl pills if CI-1 gave VARELA enough notice.

28.     CI-1 paid VARELA $4,000 cash for the firearm with the conversion device and the fentanyl pills. After the transaction was concluded, VARELA departed the location. The fentanyl pills were released to Phoenix PD for lab testing, where they tested positive for fentanyl, and weighed 162.85 grams.

29.     On December 15, 2021, VARELA and CI-1 discussed another purchase. VARELA agreed to sell CI-1 three AR pistols, each with fully automatic conversion devices for $1,700 per firearm and 3,000 fentanyl pills at the price of $1.00 per pill.

30.     VARELA agreed to meet CI-1 at Metro Center mall on December 16, 2021 at approximately 2 p.m. to conduct the transaction. Again, ATF agents monitored the transaction.

31.     At approximately 2:30 p.m., CI-1 met VARELA in the parking lot. VARELA arrived at the deal location in the **Subject Vehicle**. VARELA was driving the **Subject Vehicle,** and an unknown Hispanic male was in the passenger's seat. VARELA pulled up to the driver's side of CI-1's vehicle. CI-1 exited his/her vehicle and stood at the passenger door of the **Subject Vehicle**.

Photos of the transaction:

 

32.     The unknown Hispanic male had the fentanyl pills in his jacket and handed them to CI-1. The unknown Hispanic male also placed a duffle bag containing the three firearms in the backseat of CI-1's vehicle. VARELA told CI-1 prior to the deal that only one of the conversion devices had been installed in the firearm, and that the other two conversion devices were in the bag but not installed in the firearms. The Hispanic male passenger told CI-1 that he builds the guns out himself, and if CI-1 wanted, the passenger could get CI-1 25,000 to 30,000 fentanyl pills.

33.     CI-1 paid VARELA $8,100 cash for the firearms, conversion devices, and the fentanyl pills.

34.     On January 10, 2022, while attempting to set up a future deal with VARELA, CI-1 asked for photos of the firearms VARELA was offering for sale. VARELA responded in a voice message stating in Spanish "Let me go home and then I'll send you some photos".

35.     VARELA then told CI-1 that he was going to purchase more firearms to sell to CI-1 as he had already sold the previously advertised firearms. VARELA told CI-1 that he was going to Ammo AZ, a federal firearms licensee, to conduct the purchase.

36.     At approximately 4:15 p.m., VARELA and MAGANA arrive near Ammo AZ in the **Subject Vehicle**.  VARELA is the driver of the vehicle.  Surveillance units observed MAGANA count out cash, and then hand the cash to a Hispanic female identified as the straw purchaser.  After receiving the cash, the straw purchaser then entered Ammo AZ and purchased two Pioneer Armament Rifles.



37.     The straw purchaser then returned to the **Subject Vehicle**, where surveillance units observed her hand two rifle gun boxes to VARELA, who then placed the cases in the rear seat of the Red Ford F-150. MAGANA then hands the straw purchaser more cash, and MAGANA and VARELA then depart in the **Subject Vehicle** with the gun cases.

38.     At 5:19 p.m., the **Subject Vehicle** is seen arriving at VARELA's residence on the pole camera. Both VARELA and MAGANA exit the vehicle and enter the residence. At 5:29 p.m., VARELA sends CI-1 a photo of a rifle on what appears to be a vehicle seat and matches the make and model of the firearm purchased about an hour prior at Ammo AZ:



39.     At approximately 6:17 p.m., VARELA posted a video of a large number of firearms on top of a vehicle inside a garage. At this time, the **Subject Vehicle** was parked at the residence after returning from the straw purchase, and VARELA and MAGANA were not seen leaving the residence after returning at 5:19pm.




40.     At approximately 6:23 pm, a male matching the description of MAGANA

loads a rifle box matching the rifle purchased earlier in the day into the backseat of the

**Subject Vehicle**. VARELA and the male matching the description of MAGANA get into

the **Subject Vehicle** and arrive at MAGANA's residence at 1506 E Fremont Road at

approximately 6:50 p.m. The male matching the description of MAGANA exits the vehicle

and enters the residence.

41.     At 7:05 p.m. the **Subject Vehicle** leaves the residence to an unknown location without MAGANA.  At approximately 7:20 p.m. the **Subject Vehicle** returns to the Fremont address with two additional males.  When the Red Ford F-150 arrives at Fremont address, the male matching the description of MAGANA joins the three males, one matching the description of VARELA, and congregate in front of the residence.  All four males are standing at the rear of the **Subject Vehicle**.  All four males' cell phones light up, consistent with videos being taken of some object in the bed of the truck.

42.     Shortly thereafter, the male matching the description of MAGANA appears to remove an object from the bed of the **Subject Vehicle** and return toward the Fremont address carrying a box-like object. The **Subject Vehicle** then leaves the residence.

*katherine rottman*

KATHERINE ROTTMAN, SPECIAL AGENT
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed electronically this ___14___ day of January 2022   2:18 pm

HONORABLE DEBORAH M. FINE
United States Magistrate Judge